### JAMES REILLY'S SONS CO. v. AARON.

(Supreme Court, Appellate Term.  February 23, 1904.)

1. TENDER AFTER SUIT—INTEREST—COSTS.
   A tender made after suit brought, not including interest and costs up to the time of the tender, is invalid.

2. SAME—CONTRACT FOR SERVICES—EVIDENCE.
   In an action on a contract for repairs to an elevator in defendant's building, evidence reviewed, and *held* to show that defendant authorized performance of the work, and that he knew that it was being performed by plaintiff during its progress, so as to render him liable therefor.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by James Reilly's Sons Company against Wolf Aaron. From a Municipal Court's judgment in favor of plaintiff for less than the relief demanded and without costs, plaintiff appeals. Reversed.

Argued before FREEDMAN, P. J., and GIEGERICH and McCALL, JJ.

H. Schieffelin Sayers, for appellant.

August Dreyer, for respondent.

GIEGERICH, J. The action is to recover the sum of $58.40 for electrical repair work done upon the defendant's premises known as Nos. 67 and 69 Second street, in the borough of Manhattan, New York City. The pleadings were oral, and the answer was a general denial and a plea of tender of $24. The defendant did not deposit any sum whatever in court, and at the opening of the trial withdrew such tender, and pleaded in its stead a tender of $3.45, but did not deposit that sum or any sum in court. The justice rendered judgment in favor of the plaintiff against the defendant for $3.45, without costs.

Aside from the merits of the case, we think that the judgment is clearly erroneous, because, the tender having been made after suit was brought, it should have included the interest and costs of suit up to the time of such tender. Braumann v. Vanderpoel, 26 Misc. Rep. 786, 56 N. Y. Supp. 216; The Globe Soap Co. v. Liss, 36 Misc. Rep. 199, 73 N. Y. Supp. 153.

A more serious error, however, was committed by the trial justice in disposing of the controverted question of fact. While it is true that

¶ 1. See Tender, vol. 45, Cent. Dig. §§ 22, 26, 28.

all the material facts testified to by the plaintiff's witnesses were denied by the defendant, we think the circumstances all point to the conclusion that he authorized the performance of the work in suit, and that he knew that it was being performed by the plaintiff during its progress. The defendant, when called as a witness for the plaintiff, admitted that he was the owner of the building when the work was done, and that one Simon was the janitor.  Isaac Rosenstein gave testimony for the plaintiff to the effect that he was an electrician; that he knew the defendant, and did work for him at the building in question during the latter part of the year 1901, and in January and February, 1902; that in the beginning he received his orders direct from the defendant, and later through the janitor, Simon; that on or about January 31, 1902, between 8 and 9 o'clock in the morning, the janitor called him to the building to fix the elevator, which he inspected, and said that it was too large an undertaking for him alone; that he was introduced to one Rubinger; that he and the latter telephoned the defendant, Rubinger speaking first to the defendant, and then handing the receiver to the witness, who recognized the defendant's voice; that the witness had a conversation with the defendant, in the course of which he told him that "it would cost to fix the thing about $15 or $20, in that neighborhood, more or less," and mentioned several persons, including the plaintiff, who could do the charge, and that the defendant told him to have the work done; that the witness requested the plaintiff's workmen to come to the building, and they arrived there about 11 o'clock in the forenoon; and that the janitor called up the defendant, and told him that the plaintiff's people were there to repair the machine.  The testimony as to a further conversation between the janitor and the defendant, as well as the janitor's report to the witness, was excluded, but the witness thereupon signed an order for the work, directed to the plaintiff, and handed such order to the representative of the plaintiff. The witness Rosenstein further testified that the janitor went to the telephone, and on coming back told him "that Mr. Aaron said I should sign it, if I see that the work was done properly."  The order was then offered in evidence, but it was excluded on the objection of defendant, and the plaintiff excepted.  The witness further testified that the plaintiff's workmen then went ahead and did the work, and that while it was going on the defendant appeared and saw them doing the work, and he spoke to the latter about the job while he was looking on.  On cross-examination, the witness testified that he knew he spoke to the defendant at the other end of the wire, because he knew it was his voice; that he had previously spoken to him over the telephone, and knew it was not the defendant's son's voice, because he had also spoken to the son, and recognized the difference between his voice and that of the defendant.  The plaintiff's foreman testified that he went on the job on or about January 31, 1902, and, while there, saw the witness Rosenstein and the janitor, and that, later on, the defendant appeared and spoke to the witness about the time when the machine was coming back and the price of the job, and that he informed the defendant that he could not say when the machine would come, and that he could not tell the price, as the firm fixed prices, and that if "he wanted any price they would give it to him willingly," and that he (the witness) took

part of the machine to the shop. While this witness was testifying as to two certain items shown in the bill of particulars under the date of February 11th and 18th, the defendant's counsel admitted the same. The witness further gave testimony as to the nature of the work, and, as an expert, to the value of the same. Mr. H. S. Sayers, the then attorney of record of the plaintiff, testified that he called at the office of the attorney for the defendant, and there met the attorney, the defendant, and another man whose name he was not familiar with; that he had a general conversation with them about the payment of the bill, and that they told him they only disputed the item of January 31st, amounting to $48.65, for the reason that they understood it was only to cost about $20; and that the defendant, among other things, told him "that he had spoken to this man Rosenstein to have several parties come there, and that the Reilly people would come there and the Reedy people, and that he paid the Reedy people for their coming to the place and figuring." The defendant was the only witness for the defense. He denied having a conversation over the telephone with the witness Rosenstein, but admitted having one with him at the building. He further testified that a telephone call came to his store to his son, that he waited a while, got another request by telephone to come down to the house, that he sent for Rosenstein, who came, and that, upon being told by him that it would cost about $15 or $20 to fix the elevator, he (defendant) told him "to go ahead and do it"; but that he does not know whether or not he did the work. On cross-examination, the defendant admitted that he saw workmen at the building when he called there at the time referred to, but could not tell whether he saw the plaintiff's foreman or not; that the work under the two items admitted by him, viz., February 11th and 18th, were ordered by the janitor, who, he further testified, "had authority to call in people for little repairs like that," but that he (the defendant) "looked out for the paintings and things like that." We think the defendant's testimony that he gave an order to Rosenstein at the building to do the work in suit is improbable, in view of his other testimony that when it was so given he saw men at work upon the building. Although he says he did not know who they were, and might have spoken to plaintiff's foreman, the fact clearly appears from the evidence that he had not then employed Rosenstein to do the work, but knew some one else was doing it. The testimony of the defendant is also discredited by the evidence of the witness Sayers, which he failed to deny, and which clearly shows that the former did not deny the authority of Rosenstein to order the plaintiff to perform the work, but only disputed the price to be charged for the work. Upon the whole case we conclude that the judgment is contrary to the weight of evidence, and should be reversed, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.